The Overseers of the Poor of the Town of POMPEY *against* the Overseers of the Town of LAURENS.

*P.*, by a writing, not under seal, assigned to *C.* a lease, in fee, for sixty acres of land, in the town of *M.*, the consideration for which was a quit-claim deed by *C.* to him, for lands in *H.* supposed, at the time, to be worth 700 dollars; but it, afterwards, appeared that *C.* had no title whatever to the land, so released in exchange: *Held*, that *C.* did not acquire a title, legal or equitable, to the lease so assigned, so as to enable him to gain a legal settlement; for the quit-claim by him of land in *H.* being of no value, he could not be deemed to have paid the sum of *seventy-five* dollars, *bona fide*, or any thing, as the consideration of the purchase, so as to gain a settlement, under the act, 1 *N. R. L.* 280. sess. 36. ch. 78. s. 4.

TWO Justices of the peace of *Laurens* made an order for the removal of *Elizabeth Curry* and her children, as paupers, from the town of *Laurens* to the town of *Pompey*, as the place of their last legal settlement. On an appeal to the Court of Sessions of *Otsego* county, the order was confirmed, and the appeal dismissed. At the hearing before the Sessions, it was admitted, that *Samuel Curry*, the husband, was formerly settled in the town of *Pompey*. It appeared in evidence, that after such settlement, *William Pettingal* assigned to *Curry*, a lease in fee of sixty acres of land in the town of *Milford*, and in consideration thereof, received from *Curry* a quit-claim deed of land in the *Hardenbergh* patent. This assignment was not sealed. At the time *Pettingal* took the quit-claim, he supposed the title to the land in the *Hardenbergh* Patent was good, and worth seven hundred dollars. Neither he nor *Curry* had ever been in possession of the lands.

*Joseph Gardner*, a witness, testified, that he had investi-

gated the title to the land conveyed by *Curry* to *Pettingal*; that *Curry* had no pretence of title, nor had he ever been in possession; that at the time *Curry* conveyed, the lands were held adversely, under title derived from *George Ludlow*.

UTICA,
October, 1821.

OVERSEERS OF
POMPEY
v.
OVERSEERS OF
LAURENS.

WOODWORTH, J. delivered the opinion of the Court. The first objection is, that the order is defective : The statute directs that the pauper be conveyed to the constable of the first town in the adjoining county, or in such other manner, by the nearest and most convenient route, as the justices shall think fit, to the place of his legal settlement. The order in this case directs the constable to convey the paupers from and out of the town of *Laurens*, to the town of *Lisbon*, and from thence to the town of *Pittsfield*, and thence, in the nearest direction, to the town of *Pompey*. Whether the route prescribed by the statute has been followed or not, the town of *Pompey* cannot allege this as a ground to quash the order.

The justices had jurisdiction; and, admitting they may have mistaken the nearest route, this was not a question between them and the overseers of *Pompey*. Although there is no town of *Lisbon* in *Otsego* county, (the former name being changed to *New-Lisbon*,) yet it will be seen that taking the paupers to *Pittsfield*, and from thence the nearest direction to *Pompey*, he would pass through the nearest town in *Chenango*, the adjoining county, and thus substantially satisfy the words of the statute, which gives a discretion to the justices, to direct " *by the nearest and most convenient route.*" The objection does not appear to have been made in the Court below, and cannot be listened to here.

The next question is, did the pauper acquire a legal title to the land in *Milford?* On the authority of *Jackson, ex dem. Goerck*, v. *Wood*, (12 *Johns Rep.* 73.) I think he did not. In that case it was decided, that a conveyance of a freehold, or estate in fee, must be by deed or writing under seal.

If *Curry* did not acquire a legal title, did he, by reason of the assignment and giving a quit-claim of the *Hardenbergh* lands, acquire an indefeasible *equitable* interest to

UTICA,
October, 1821.

OVERSEERS OF
POMPEY
v.
OVERSEERS OF
LAURENS.

have the title perfected ? According to the cases in 14 *Johns Rep.* 199. and 469. it is necessary to make out the payment of the whole consideration money, and in order to constitute a settlement, the sum of seventy-five dollars must have been *bona fide* paid. The consideration, such as it was, may be considered as wholly paid. *Pettingal* took a quit-claim deed for the lands in the *Hardenbergh* patent, in exchange for land in *Milford.* No other consideration is stated or pretended. He then supposed the title was good, and that the land was worth seven hundred dollars. He did not know that *Curry* intended to defraud him.

Now, as it turns out, that *Curry* never had title or possession of the lands, but that they were held adversely, at the time he quit-claimed, would a Court of Equity, under such circumstances, compel *Pettingal* to perfect the title to the land? Every question of this kind is under the sound discretion of the Court, to be regulated by principles of equity. In *Osgood* v. *Franklin,* (2 *Johns Ch. Rep.* 23.) the Chancellor observes, " though inadequacy of price is not a ground for decreeing an agreement to be delivered up, or a sale rescinded, (unless its grossness amount to a fraud,) yet it may be sufficient for the Court to refuse to enforce performance. It is not an uncommon case for the Court to refuse to enforce for inadequacy, and, at the same time, refuse to rescind. The two cases admit of very different views and considerations." As the consideration in this case was not merely inadequate, but a nullity, it cannot be doubted that equity would not lend its aid to perfect the title, and if so, the equitable estate in *Curry* is defective, and cannot lay the foundation of a settlement. But there is another defect equally fatal. The appellants were bound to prove that *Curry* paid seventy-five dollars, *bona fide,* toward the purchase of the lot in *Milford.* This has not been done; for the title conveyed by *Curry* was of no value. The question does not depend on the supposition of the party that the land was worth seventy-five dollars, but on the value, in truth. and in fact, of the title conveyed. If this is not the rule to be applied, a settlement may be gained, as appears to me, in opposition to the letter and spirit of the statute. The proof of value is vague and un-

satisfactory ; all that is stated is, that *Pettingal* supposed, at the time he took the quit-claim, the lands were worth seven hundred dollars : From the facts, it may be inferrred, that he never had seen the lands, but took them at risk. He has given no reasons for this estimate. Without something more, I am not satisfied that the value has been sufficiently shown : *Pettingal's* testimony on this point is little more than conjecture,

On the whole, we are of opinion that the order of the Sessions must be affirmed.

Order of Sessions affirmed.